Slip Op. 19-74

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ECHOSTAR TECHNOLOGIES, L.L.C., | |
| Plaintiff, | |
| v. | Before: Gary S. Katzmann, Judge |
| | Court No. 16-00074 |
| UNITED STATES, | |
| Defendant. | |

## OPINION

[Defendant's motion for summary judgment is granted.  Plaintiff's motion for summary judgment is denied.]

Dated: June 17, 2019

Nancy A. Noonan and Elyssa R. Kutner, Arent Fox LLP, of Washington, DC, argued for plaintiff. With them on the brief were David Hamill, and Jackson D. Toof.

Hardeep K. Josan, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for defendant. With her on the brief were Joseph H. Hunt, Assistant Attorney General, and Amy M. Rubin, Assistant Director. Of counsel was Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of Washington, DC.

   Katzmann, Judge: This case involves an action by plaintiff, EchoStar Technologies L.L.C.

("EchoStar"), against defendant the United States ("the Government") to collect a refund of 99%

of duties paid on its exported video technology goods.  Before the court is whether EchoStar's

electronic transmission of summary data for refunds, known as drawback claims, was legally

sufficient under the applicable 1993 version of a statute (since amended), or whether, as the

Government contends, EchoStar was required to file paper claims containing more information.

Although EchoStar submitted the summary data within the requisite time period, it submitted paper

drawback claims after the statutory deadline to file its claims had passed.  U.S. Customs and Border

Protection ("CBP") liquidated the twelve claims in issue for goods exported in 2011 and 2012 and

denied duty refunds worth $276,275.12.  EchoStar protested the decisions with CBP, and CBP

denied the protests.  EchoStar then filed this action.  EchoStar asks the court to void the denials of

its protests and to remand its claims to CBP with instructions to liquidate the claims with full

refunds.  Both parties now move for summary judgment.  The court grants the Government's

motion for summary judgment and denies EchoStar's motion for summary judgment.

## BACKGROUND

### I.   *Drawback Claims Generally*

Under 19 U.S.C. §§ 1313(j)(1)[1] and 1313(*l*)(2)[2], CBP will refund up to 99% of duties and

fees paid on goods imported into the United States if the importer subsequently destroys or exports

---

[1] 19 U.S.C. § 1313(j)(1):

> If imported merchandise, on which was paid any duty, tax, or fee imposed under
> Federal law upon entry or importation--
> (A) is, before the close of the 5-year period beginning on the date of importation
> and before the drawback claim is filed--
>     (i) exported, or
>     (ii) destroyed under customs supervision; and
> (B) is not used within the United States before such exportation or destruction;
> then upon such exportation or destruction an amount calculated pursuant to
> regulations prescribed by the Secretary of the Treasury under subsection (l) shall
> be refunded as drawback. The exporter (or destroyer) has the right to claim
> drawback under this paragraph, but may endorse such right to the importer or any
> intermediate party.

[2] 19 U.S.C. § 1313(*l*)(2):

> (A) In general
> Not later than the date that is 2 years after February 24, 2016, the Secretary shall prescribe
> regulations for determining the calculation of amounts refunded as drawback under this
> section.
> (B) Claims with respect to unused merchandise
> The regulations required by subparagraph (A) for determining the calculation of amounts
> refunded as drawback under this section shall provide for a refund of equal to 99 percent

the goods unused.  19 U.S.C. § 1313 refers to these refunds as "drawbacks."  The exporter of those

goods may claim the drawback, subject to 19 U.S.C. § 1313(r)(1)[3] and CBP's regulations, 19

C.F.R. § 191.82.

---

of the duties, taxes, and fees paid on the imported merchandise, which were imposed under Federal law upon entry or importation of the imported merchandise, and may require the claim to be based upon the average per unit duties, taxes, and fees as reported on the entry summary line item or, if not reported on the entry summary line item, as otherwise allocated by U.S. Customs and Border Protection, except that where there is substitution of the merchandise, then—

> (i) in the case of an article that is exported, the amount of the refund shall be equal to 99 percent of the lesser of—
>
>> (I) the amount of duties, taxes, and fees paid with respect to the imported merchandise; or
>>
>> (II) the amount of duties, taxes, and fees that would apply to the exported article if the exported article were imported; and
>
> (ii) in the case of an article that is destroyed, the amount of the refund shall be an amount that is—
>
>> (I) equal to 99 percent of the lesser of—
>>
>>> (aa) the amount of duties, taxes, and fees paid with respect to the imported merchandise; and
>>>
>>> (bb) the amount of duties, taxes, and fees that would apply to the destroyed article if the destroyed article were imported; and
>>
>> (II) reduced by the value of materials recovered during destruction as provided in subsection (x).

[3] 19 U.S.C. § 1313(r)(1) (1993):

> A drawback entry and all documents necessary to complete a drawback claim, including those issued by the Customs Service, shall be filed or applied for, as applicable, within 3 years after the date of exportation or destruction of the articles on which drawback is claimed, except that any landing certificate required by regulation shall be filed within the time limit prescribed in such regulation. Claims not completed within the 3-year period shall be considered abandoned. No extension will be granted unless it is established that the Customs Service was responsible for the untimely filing.

The statute, enacted in 1993, was substantially amended in 2016 to require electronic filing of drawback claims.  See infra p. 16 n.14.  Because EchoStar's claims predate the effective date of the amendment, however, the 1993 version of the statute governs the instant litigation.  Unless otherwise stated, all further references to 19 U.S.C. § 1313(r)(1) are to the 1993 version.

"[D]rawbacks are a privilege, not a right." Shell Oil Co. v. United States, 688 F.3d 1376,

1382 (Fed. Cir. 2012) (internal citations omitted); Graham Eng'g Corp. v. United States, 30 CIT

1907, 1912, 465 F. Supp. 2d 1353, 1357 (2006), aff'd, 510 F.3d 1385 (Fed. Cir. 2007) (holding

drawbacks are a "mere gratuity, proffered by the government").  CBP has the authority to deny

drawback claims which fail to strictly adhere to the drawback filing requirements.  Int'l Light

Metals v. United States, 279 F.3d 999, 1001 (Fed. Cir. 2002).  Congress has expressly conditioned

the privilege of drawback upon fulfilment of CBP's drawback regulations.  19 U.S.C. § 1313(*l*).

The burden is on the applicant to take "preliminary steps and acts . . . in accordance with

[applicable] regulations" to establish a claim.  Graham Eng'g Corp., 465 F. Supp. 2d at 1357–58

(internal quotations omitted).  Further, "'reasonable and proper' drawback regulations are within

[CBP]'s authority[,] and . . . the drawback statute 'should be construed as a Governmental grant

of privilege, and any doubt in construction thereof should be resolved in favor of the

Government.'" Id. at 1358 (quoting United States v. Ricard–Brewster Oil Co., 29 C.C.P.A. 192,

197 (1942)).  Where, as here, the regulation is mandatory, "compliance is a condition precedent to

the right of recovery of drawback." United States v. Lockheed Petroleum Servs., 702 F.2d 1472,

1474 (Fed. Cir. 1983).

"By statute, claims for drawback generally must be filed and completed within a three-year

limitations period accruing from the date of export." Aectra Ref. & Mktg. v. United States, 565

F.3d 1364, 1366 (Fed. Cir. 2009) (citing 19 U.S.C. § 1313(r)(1)) (emphasis added); see also Flint

Hills Res., LP v. United States, 42 CIT __, 333 F. Supp. 3d 1362, 1371 (2018) ("In order for [CBP]

to grant a drawback claim, the claim must be 'complete.'").  Pursuant to 19 U.S.C. § 1313(r)(1),

"a drawback entry and all documents necessary to complete a drawback claim . . . shall be filed . .

. within 3 years after the date of exportation . . . ." See also Shell Oil, 688 F.3d at 1379.

Accordingly, the statute requires timely filing of both the "drawback entry" and "all documents necessary to complete a drawback claim." <u>Aectra</u>, 565 F.3d at 1366.  If the claim is rejected as incomplete, the filer has an "opportunity to complete the claim subject to the requirement for filing a complete claim within 3 years."  19 C.F.R. § 191.52(a).  Claims that are not completed within the three-year period are "considered abandoned." <u>Shell Oil</u>, 688 F.3d at 1379 (quoting 19 U.S.C. § 1313(r)(1)).  "[A]llowing claimants to submit claims piecemeal after the three-year completion window has passed would detract from the ability of [CBP] to effectively carry out its duties, including preventing circumvention of the three-year statutory limit of 19 U.S.C. § 1313(r)(1)." <u>Aectra</u>, 565 F.3d at 1373 (internal quotations omitted).

Under Commerce's regulations, a complete "drawback claim" is comprised of "the drawback entry and related documents required by regulation which together constitute the request for drawback payment."  19 C.F.R. § 191.2(j).  Drawback entries -- which contain required information concerning the article on which drawback is claimed -- must be filed using Customs Form 7551.  19 C.F.R. § 191.2(k).  On Customs Form 7551, an exporter must list and describe each item for which the exporter claims a drawback, provide the dates of import and export, and indicate the preferred method of filing. 19 C.F.R. § 191.52(a)(1) provides the full list of the documents necessary to complete the claim, including Customs Form 7551.[4]

---

[4] 19 C.F.R. § 191.52(a)(1):

> Unless otherwise specified, a complete drawback claim under this part shall consist of the drawback entry on Customs Form 7551, applicable certificate(s) of manufacture and delivery, applicable Notice(s) of Intent to Export, Destroy, or Return Merchandise for Purposes of Drawback, applicable import entry number(s), coding sheet unless the data is filed electronically, and evidence of exportation or destruction under subpart G of this part.

## II.    *Factual Background and Procedural History*

EchoStar is a television and entertainment company that creates, imports, and exports video and satellite technology.  Pl.'s Br. at 2, July 17, 2018, ECF No. 26; Compl. ¶ 4, Dec. 23, 2016, ECF No. 9.  In 2013, CBP approved EchoStar's application to file drawback claims to recover duties paid on certain imported video technology, including remote controls, switches, and Low Noise Block Feeds.[5]  Pl.'s Stmt. Material Facts ¶ 1–2, July 17, 2018, ECF No. 27; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶ 1–2, Sept. 18, 2018, as modified Sept. 19, 2018, ECF No. 28.  EchoStar then hired FAK Distribution and Logistics ("FAK"), which contracted Laredo Becnel, Inc. ("Laredo Becnel"), to file the drawback claims.  Pl.'s Stmt. Material Facts ¶ 2; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶ 2.

Prior to attempting to file its drawback claims, EchoStar reviewed a 2010 memo ("Guidance") from CBP's San Francisco Drawback Office to drawback filers, provided to EchoStar by its outside counsel.  Def.'s Br. Ex. C, Dep. Tr. 179:18-20.  The Guidance provided tips on the submission of drawback claims.  Pl.'s Br. Ex. B, July 17, 2018, ECF No. 27; Def.'s Br. Ex. C, Dep. Tr. 179:18-20.  The Guidance was not accessible online, and CBP neither sent it to EchoStar nor instructed EchoStar to rely on it.  Def.'s Br. Ex. C, Dep. Tr. 166:17-167:5.  CBP describes the Guidance as an "informal list of tips and key points [that] is not all inclusive, but does address some of the most frequent issues we have observed."  Pl.'s Br. Ex. B.  The Guidance provides that "a complete claim must have . . . CBP form 7551 - Drawback Entry," among other required documents, and warns that "[i]f any of the above is missing, claims will be rejected prior

---

[5] Low Noise Block Feeds are "amplifiers used in satellite dishes. . . .[T]hey take the very faint signal they receive and magnify it so that it is powerful enough to use.  This is the first step in taking the microwave signal coming from space and turning it into images and sounds for televisions and computers."  Ronald Kimmons, "Differences Between LNB & LNBF," Sciencing (Oct. 6, 2017), https://sciencing.com/differences-between-lnb-lnbf-12352553.html.

to input by CBP." <u>Id.</u>   The Guidance also indicates that the San Francisco Drawback Office

preferred that claimants file through the Automated Broker Interface ("ABI"), an online filing

system.[6] <u>Id.</u>   The Guidance states:

> How to file claims:  There are two options:  ABI & Manual.
>
> Filing ABI claims is the preferred method. This can be done directly or by transmitting through a service bureau. This will give you priority processing, fast accelerated payment, access to information on line [sic] and less [sic] documentation errors. If you want a solid cash flow and stay completive [sic] in this economic environment, get ABI certified or use a service bureau.
>
> Manual claims are at the bottom of our processing list. The procedure is to do the initial review and ACS input no sooner than 89 day [sic] after filing. We strongly encourage you to either use a service bureau to transmit these drawback claims or purchase drawback software and work with your ABI rep to become ABI certified for drawback.

<u>Id.</u>   The Guidance also said that "[u]nless your claim is outside the standard time frames (if it was

submitted without errors or deficiencies), do not contact the drawback office for a status report."

<u>Id.</u>

At the time of filing, EchoStar also had in its possession the "Drawback Summary" chapter

of the June 2011 CBP and Trade Automated Interface Requirements document ("CATAIR

document"), which explained how to use the ABI system for document filing.[7]   Def.'s Br. Ex. A,

Sept. 18, 2018, ECF No. 28.   The chapter was intended to "provide[] records related to the

drawback summary processing" and stated that "[o]ne or more drawback summary transactions

---

[6] CBP, in its letter denying EchoStar's protests, described the purpose of the ABI system as allowing filers to submit data electronically "to the Drawback Office in advance of a complete drawback claim's paper filing, which enable[s] the Drawback office to better process a drawback claim."  Compl. ¶ 45; Tab G(1)–(2).

[7] CBP contends that EchoStar also possessed a CBP publication called "Drawback, a Refund for Certain Exports," that was explicit about the need for a paper claim.  Def.'s Br. at 12.  However, EchoStar does not "have a specific recollection of seeing this document" prior to submitting its drawback entries.  Def.'s Br. Ex. C, Dep. Tr. at 174:14–177:4.

may be submitted." Id. The CATAIR document also stated that, "[i]t should be noted that at this time, a full paper claim is still required. The ABI data is a summary of the claim. Drawback summary data may be transmitted up to 30 days in advance of the estimated claim date (the date the legal paper claim is submitted)." Id.

EchoStar also reviewed the governing statute, 19 U.S.C. § 1313(r)(1), and the governing regulation, 19 C.F.R. § 191.51, prior to transmitting its claim data. Def.'s Br. Ex. C, Dep. Tr. 167:13–170:21. EchoStar understood the statutory language of 19 U.S.C. § 1313(r)(1), requiring the filing of "[a] drawback entry and all documents necessary to complete a drawback," to mean that filing Customs Form 7551 was required. Id. at 168:10–18. EchoStar further understood the phrase to mean that it "needed more information" but "didn't have an appreciation for exactly what that portion of the provision required" and "didn't really parse the words and . . . dig into the drawback entry and all documents." Id. at 169:11–170:21. EchoStar understood 19 C.F.R. § 191.51 to "lay out what was required to complete drawback claims," id. at 173:19–21, but noted that it "didn't see anywhere where [the regulation] said you must file paper documents," id. at 112:3–5.

In a July 16, 2014 email, FAK explained to EchoStar that its protocol was to file a paper claim as "back up" and that EchoStar could call CBP to check whether filing a paper claim was required. Def.'s Br. Ex. C, Dep. Tr. 110:15–111:2.[8] EchoStar failed to do so. Id. at 111:6–114:1. EchoStar did not contact the San Francisco Drawback Office because it felt "status calls interrupt [the] work [of government agencies] and . . . they don't always appreciate you calling to check." Id. at 116:9–15. EchoStar also did not contact the San Francisco Drawback Office because it

---

[8] EchoStar received two more emails containing the same information. Def.'s Br. Ex. C, Dep. Tr. 118:17–120:04; 122:02–122:16.

thought that FAK "hadn't read the [G]uidance all the way through" and that the Guidance did not

require submitting a paper claim.  Id. at 115:3–7.  EchoStar emailed FAK that it "was checking

with [the San Francisco] Drawback Office and will let you know what we hear" but did not check

with CBP.  Id. at 117:7–118:15.  FAK also told EchoStar that "[a]ny supporting documents to the

claims should be sent with the filing copies to [CBP] to back up the entries."  Id. at 126:13–127:4.

When EchoStar electronically filed its summary data via the ABI system, it was not yet

possible to submit Customs Form 7551 electronically, and "Customs Form 7551 had to be filed

with [CBP] manually."  Def.'s Br. at 2 (citing Def.'s Br. Ex. B (Pl.'s Resp. to Def.'s Interrog.) at

6; Compl. Tab G (CBP Protest Denials, 2809-15-100509 and 2809-15-100589)).  See also Oral

Argument, Mar. 13, 2019, ECF No. 37.  EchoStar contends that it filled out Customs Form 7551

and gave it to drawback broker Laredo Becnel, which then transferred some of the information on

Customs Form 7551 into the ABI system.  At oral argument, the Government clarified that the

ABI system did not allow for parties to enter some of the information required by Customs Form

7551, including the dates of exportation, which are necessary for CBP to determine whether a

drawback claim is timely.  Oral Argument.  Neither party disputes these facts.  Id.

EchoStar, through Laredo Becnel, filed eight summary data submissions electronically

between July and December 2014, requesting a total of $225,510.12 for eight drawbacks.  Compl.

¶ 10; Compl. Ex. C at 26–31.  At the time of electronic filing, each of these claims had not yet

expired; the last of these claims for refunds expired December 31, 2014.  Pl's Br. Ex. 1 ¶ 11, July

17, 2018, ECF No. 27.  In January 2015, the San Francisco Drawback Office sent a letter ("January

letter") warning Laredo Becnel that "within 15 days from the date of this letter[,] [it] must submit

the drawback claims associated with the ABI transmission or the drawback claims w[ould] be

cancelled . . . ."  Pl.'s Br. Ex. 1 Tab A.  The January letter also quoted the CATAIR document,

stating that the "ABI data is a <u>summary</u> of the claim.  Drawback summary data may be transmitted

up to 30 days in advance of the estimated claim date (the date the legal paper claim is submitted)."

<u>Id.</u>  Laredo Becnel submitted paper copies of all eight claims on Form 7551 within the 15-day

period.  Pl.'s Stmt. Material Facts ¶ 5; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶ 5.  CBP denied

all eight claims as untimely and liquidated the claims without refunds.  Pl.'s Stmt. Material Facts

¶ 8; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶ 8.

　　　　In early February 2015, EchoStar, through its drawback broker, Laredo Becnel,

electronically filed four more summary data submissions via the ABI system.  Pl.'s Br. Ex. 1 Tab

E; Def.'s Ans. ¶ 15, Apr. 27, 2017, ECF No. 13.  On February 24, 2015, Becnel filed hard copies

of the claims.  Pl.'s Stmt. Material Facts ¶ 7; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶ 7.  The

claims contained entries of exports dated between February 13 and 24, 2012.  Pl.'s Stmt. Material

Facts ¶ 7; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶ 7.  On February 25, 2015, CBP informed

EchoStar that it needed to revise its four claims and exclude any exports dated prior to February

24, 2012.  Pl.'s Br. Ex. 1 Tab E.  EchoStar resubmitted these four claims.  Pl.'s Stmt. Material

Facts ¶ 12; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶ 12.  It did not remove exports dated between

February 13 and 24, 2012 because it believed that the "day of filing" meant the day it submitted

its electronic claims, and thus it believed its claims for these exports were timely.  Pl.'s Stmt.

Material Facts ¶ 13; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶ 13.  CBP liquidated the four claims

with refunds but did not provide $50,765.40 worth of refunds for exports dated between February

13 and 24, 2012.  Compl. ¶ 18; Pl.'s Stmt. Material Facts ¶ 14; Def.'s Resp. to Pl.'s Stmt. Material

Facts ¶ 14.

　　　　On August 18, 2015, EchoStar filed Protest 2809-15-100509, covering the first eight

liquidated claims.  Pl.'s Stmt. Material Facts ¶ 15; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶ 15.

In early October 2015, EchoStar filed Protest 2809-15-100589, covering the remaining claims. Pl.'s Br. Ex. 3 ¶ 20.  On November 3, 2015, CBP's Port of San Francisco denied both protests and EchoStar's application for further review.  Pl.'s Stmt. Material Facts ¶ 19; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶ 19.  On January 5, 2016, EchoStar filed requests with the San Francisco Port Director to void the denial of the protests pursuant to 19 U.S.C. § 1515(c) and (d).[9]  Pl.'s Stmt. Material Facts ¶ 19; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶ 19.  On March 8, 2016, CBP denied all these requests.  Pl.'s Stmt. Material Facts ¶ 19; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶ 19.

On December 23, 2016, EchoStar filed the present action, contesting CBP's denials of its protests.  The Government answered the complaint on April 27, 2017.  EchoStar moved for summary judgment on July 17, 2018, and the Government filed a cross-motion for summary judgment and its opposition to EchoStar's motion for summary judgment on September 18, 2018. The court heard oral argument on March 13, 2019.

---

[9] 19 U.S.C. § 1515(c) and (d) provide:

(c) Request for set aside of denial of further review

If a protesting party believes that an application for further review was erroneously or improperly denied or was denied without authority for such action, it may file with the Commissioner of U.S. Customs and Border Protection a written request that the denial of the application for further review be set aside. Such request must be filed within 60 days after the date of the notice of the denial . . . .

(d) Voiding denial of protest

If a protest is timely and properly filed, but is denied contrary to proper instructions, the Customs Service may on its own initiative, or pursuant to a written request by the protesting party filed with the appropriate port director within 90 days after the date of the protest denial, void the denial of the protest.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1581(a).  The court reviews de novo "civil actions contesting a denial of a protest under section 515 of the Tariff Act of 1930" "upon the basis of the record made before the court."  See 28 U.S.C. § 2640(a)(1); Flint Hills, 333 F. Supp. 3d at 1371 (de novo review of record in appeal of denial of protest actions).

## DISCUSSION

Summary judgment is proper where "the movant shows that there is no genuine dispute as to material fact and the movant is entitled to judgment as a matter of law."  USCIT R. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Scott v. Harris, 550 U.S. 372, 379 (2007) (internal citations omitted) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–587 (1986)).  "When [as in this case] both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration."  JVC Co. of Am. v. United States, 234 F.3d 1348, 1351 (Fed. Cir. 2000).

EchoStar contends that (1) the date of filing for the purpose of timeliness is the date of electronic filing; and (2) in the alternative, because CBP was responsible for the untimely filing, the statutory time limit should be waived and CBP's failure to waive the time limit was an abuse of discretion.  Pl.'s Br. at 1.  The court concludes that the undisputed evidence supports summary judgment for the Government.  The court determines that (1) EchoStar's electronic submission of summary data was not a "filing" under 19 U.S.C. § 1313; and (2) CBP was not responsible for EchoStar's untimely filing.  The court thus sustains CBP's denial of EchoStar's protests and rejects EchoStar's request that the court remand its claims to CBP with instructions to liquidate the claims with full refunds.

**I.**   ***Electronic Filing of Summary Data Does Not Constitute a Filing of a Drawback Claim Pursuant to the Governing 1993 Version of 19 U.S.C. 1313(r) and CBP's Regulations.***

EchoStar argues that the applicable 1993 version of 19 U.S.C. § 1313 permits filing of electronic claims and that CBP's requirement that EchoStar submit paper claims is contrary to law. Pl.'s Br. at 4–11.  In its primary argument, EchoStar contends that its drawback claims were timely because it transmitted "certain information" via ABI within the three-year statutory time limit. Pl.'s Br. at 2, 4–7.  EchoStar asserts that because 19 U.S.C. § 1313(*l*) and 19 C.F.R. § 191.2(n) authorize the submission of documents electronically, the date that its drawback broker transmitted the summary data via ABI was the date that its claims were "filed" for purposes of § 1313(r)(1). The court is not persuaded by EchoStar's argument.  EchoStar ignores the statutory requirement that a drawback claim will be considered timely only if "a drawback entry and <u>all documents necessary</u> to complete" the claim are filed within the three-year period.  19 U.S.C. § 1313(r)(1) (emphasis added).

As discussed above, pursuant to 19 U.S.C. § 1313(r)(1), "a drawback entry and all documents necessary to complete a drawback claim . . . shall be filed . . . within 3 years after the date of exportation . . . ."  <u>See also</u> <u>Shell Oil</u>, 688 F.3d at 1379.  Under CBP's regulations, a complete "drawback claim" is comprised of "the drawback entry and related documents required by regulation which together constitute the request for drawback payment."  19 C.F.R. § 191.2(j). Drawback entries -- which contain required information concerning the article in which drawback is claimed -- must be filed using Customs Form 7551.  19 C.F.R. § 191.2(k).  Thus, a drawback claim cannot be complete without Customs Form 7551.  19 C.F.R. § 191.51(a)(1).

Here, it is undisputed that EchoStar did not file the drawback entry on Customs Form 7551 and all of the documents necessary to complete the drawback claims within the three-year

limitations period.  See Pl.'s Stmt. Material Facts ¶¶ 5, 7; Def.'s Resp. to Pl.'s Stmt. Material Facts ¶¶ 5, 7; see also Compl. Tab B.  When EchoStar filed its submissions, the ABI system did not permit filing of Form 7551.  Thus, EchoStar was only able to transmit summary data, rather than complete claims.  Def's Br. at 9.  Having failed to adhere to the drawback filing requirements, EchoStar was not entitled to the drawback privilege.  See Int'l Light Metals, 279 F.3d at 1001; 19 U.S.C. § 1313(*l*) (expressly conditioning the privilege of drawback upon fulfilment of CBP's drawback regulations).  As such, CBP acted within its authority in denying EchoStar's drawback claims.

The court is not persuaded by EchoStar's arguments to the contrary.  EchoStar contends that in 1993, when Congress amended 19 U.S.C. § 1313(*l*) as part of the Customs Modernization Act,[10] "Congress intended for a drawback claim to be considered 'filed' within the statutory meaning of that term by the submission . . . of either physical claims or electronic submission once the process is authorized by CBP."  Pl.'s Br. at 5.  EchoStar specifically cites 19 U.S.C. § 1313(*l*), authorizing the Secretary of the Treasury to regulate the drawback process.  Id.  At the time EchoStar submitted its claims, § 1313(*l*) stated, "[a]llowance of the privileges provided for in this section shall be subject to compliance with such rules and regulations as the Secretary of Treasury shall prescribe, which may include, but need not be limited to, the authority for the electronic submission of drawback entries . . . ."  19 U.S.C. § 1313(*l*).  This provision, however, did not mandate the acceptance of electronic filing, much less acceptance of an incomplete electronic filing.  EchoStar acknowledges that the intent of Congress was merely to allow CBP the discretion to accept electronic filings of certain documents.  Pl.'s Br. at 5.  Moreover, EchoStar misconstrues

---

[10] Title VI of the North American Free Trade Agreement Implementation Act, Pub. L. 103–182, 107 Stat. 2057 (1993).

this provision by equating "drawback entries" to "drawback claims." <u>Id.</u>  As has been noted,

drawback entries are documents that contain descriptions of the articles "on which the drawback

is claimed."  19 C.F.R. § 191.2(k).  A drawback claim is the complete request for drawback

payment.  19 C.F.R. § 191.2(j).  Thus, the statute does not create any obligation to accept the

electronic filing of drawback claims.

       EchoStar further argues that CBP authorized the electronic submission of drawback claims

when it amended its definition of the term "filing."  Pl.'s Br. at 6.  To support its contention that

CBP must accept electronically filed claims, EchoStar cites the 1998 amendment to CBP's

regulatory procedures, which defined "filing" in 19 C.F.R. § 191.2(n).  <u>Drawback</u>; <u>Final Rule</u>, 63

Fed. Reg. 10,970, 10,970 (Mar. 5, 1998).  The amended definition included "the delivery to [CBP]

of any document or documentation, as provided for in this part, and includes electronic delivery

of any such document or documentation."  <u>Id.</u> at 11,008 (emphasis omitted).  EchoStar contends

that "[i]n promulgating this new regulation, CBP expressly and unequivocally permitted drawback

claims to be 'filed' within the meaning of § 1313(r) electronically."  Pl.'s Br. at 6.  EchoStar does

not explain, however, why redefining "filing" to include electronic delivery would allow

incomplete claims to be considered timely.  <u>See</u> 19 U.S.C. § 1313(r) (requiring a complete

drawback claim within three years of export).

       EchoStar also argues that the CATAIR document, a CBP document that instructs filers on

how to use the ABI system, <u>supra</u> p. 7, materially changes 19 C.F.R. § 191.2(n) and therefore

required notice and comment rulemaking under the Administrative Procedure Act § 553.  Pl's Br.

at 8.  EchoStar contends that the CATAIR document's statement that "the claim date is the date

the legal paper claim is submitted" and not the date that the claim was filed via electronic delivery

contradicts 19 C.F.R. § 191.2(n).  <u>Id.</u>  This contention is not persuasive.  The CATAIR document

is an instruction manual for filers and does not constitute a "binding rule of law" subject to the

notice and comment process, as EchoStar asserts.  Pl's Br. at 9.  See Apex Frozen Foods Priv. Ltd.

v. United States, 40 CIT _, 144 F. Supp. 3d 1308, 1320 (2016), aff'd, 862 F.3d 1337 (Fed. Cir.

2017) (quoting Am. Mining Cong. v. Mine Safety Admin., 995 F.2d 1106, 1112 (D.C. Cir. 1993))

(setting forth notice and comment rulemaking considerations).   Moreover, in any event, the

CATAIR instructions did not amend the date of filing, nor are they inconsistent with the existing

regulations.  19 C.F.R. § 191.51(a) lists the necessary documents to file a complete drawback

claim, including Customs Form 7551.[11]  19 C.F.R. § 191.2(n) does not provide that an electronic

filing alone constitutes a claim filed or that the absence of Form 7551 is permitted.  It merely

allows for the electronic filing of some documents: "[f]iling means the delivery to [CBP] of any

document or documentation, as provided for in this part, and includes electronic delivery of any

such document or documentation."  While EchoStar filed some data electronically, it did not file

complete claims.  Indeed, at oral argument, the Government acknowledged that if Customs Form

7551 could have been filed electronically, the claim could have been complete.  Because the date

of filing means the date that the complete claim is filed, and a complete claim could only be filed

in paper form, the CATAIR document did not amend, nor was it inconsistent with, CBP

regulations.[12]

---

[11] That provision stated:

> Unless otherwise specified, a complete drawback claim under this part shall
> consist of the drawback entry on Customs Form 7551, applicable certificate(s)
> of manufacture and delivery, applicable Notice(s) of Intent to Export, Destroy,
> or Return Merchandise for Purposes of Drawback, applicable import entry
> number(s), coding sheet unless the data is filed electronically, and evidence of
> exportation or destruction under subpart G of this part.

[12] The court notes that its analysis is buttressed by subsequent amendment of the governing statute.
Notably, Congress amended 19 U.S.C. § 1313 in February 2016.  The changes included extending
the statutory filing period to five years and requiring electronic filing of drawback claims.  See 19

## II.   CBP Was Not Responsible for EchoStar's Untimely Claims

EchoStar argues that CBP was responsible for the untimely filing and, thus, should have extended the three-year period pursuant to 19 U.S.C. § 1313(r)(1).   See Pl.'s Br. at 11–16. EchoStar offers two alternative bases for ascribing blame to CBP.   First, EchoStar alleges that the Guidance from the San Francisco Drawback Office misled EchoStar into believing that it could file its claims electronically via ABI.   Second, EchoStar alleges that CBP should have notified EchoStar sooner that additional information was necessary to complete its drawback claims.   Id. Because these allegations are not persuasive, EchoStar has failed to establish that CBP was responsible for the untimely filing.

### A.   EchoStar's Unreasonable Reliance on the Guidance Does Not Make CBP Responsible.

 The Tariff Act requires drawback claims to be filed within three years.   19 U.S.C. § 1313(r)(1).   "No extension will be granted unless it is established that the [CBP] was responsible for the untimely filing."   Id.   "On its face, and consistent with this history, § 1313(r)(1) creates an explicit exception to the three-year time period limitation for drawback claims when [CBP] is 'responsible' for the tardiness."   Delphi Petroleum, Inc. v. United States, 33 CIT 1758, 1765, 662 F. Supp. 2d. 1348, 1354 (2009).

The Tariff Act does not define the term "responsible."   19 U.S.C. § 1313.   Black's Law

---

U.S.C. § 1313(r)(1) (2016) ("A drawback entry shall be filed or applied for, as applicable, not later than 5 years after the date on which merchandise on which drawback is claimed was imported."); 19 U.S.C. § 1313(r)(4) (2016) ("All drawback claims filed on and after the date that is 2 years after February 24, 2016, shall be filed electronically.").   New regulations reflected these statutory changes.   See 19 C.F.R. § 190.51(a)(1) ("[A] complete drawback claim under this part will consist of the successful electronic transmission to CBP . . . ."); 19 C.F.R. § 190.51(e)(1) ("A complete drawback claim is timely filed if it is successfully transmitted not later than 5 years after the date on which the merchandise designated as the basis for the drawback claim was imported and in compliance with all other applicable deadlines under this part.").   The statutory amendment (and conforming modification of regulations) suggests that because Congress felt the need to require electronic filings, CBP was not previously required to accept them.

Dictionary defines "responsibility" as "[t]he obligation to answer for an act done, and to repair any injury it may have caused." Black's Law Dictionary, available at https://thelawdictionary.org/responsibility/ (last visited June 17, 2019). See also Oxford English Dictionary, available at https://www.oed.com/view/Entry/163863?redirectedFrom=responsible #eid (last visited June 17, 2019) (defining "responsible" as "answerable or liable to be called to account to another person for something"). These definitions, however, do not articulate the level of fault necessary for CBP to be considered "responsible."

The courts have seldom had occasion to address whether CBP is "responsible" for an untimely filing of a drawback claim under § 1313(r)(1). In Aectra, the plaintiff had filed and received drawbacks on several claims. 565 F.3d at 1366. The plaintiff filed incomplete claims because, at that time, exporters could not receive drawbacks on Harbor Maintenance Tax ("HMT") and Merchandise Processing Fees ("MPF"), and Aectra did not file to collect on these fees. Id. at 1367. The Federal Circuit ruled that "[a] claimant is generally required to file a complete and specific claim within the limitations period, even if the government authority to whom the claim is presented is certain to dispute the validity of the claim." Id. at 1375. The court acknowledged the statutory provision "allowing extensions for [CBP] delay" but found it "not applicable" because "Aectra's failure to file a protective claim for taxes and fees cannot fairly be attributed to the agency." Id. at 1373.

This court was presented with the question of CBP's responsibility for untimely claims under 19 U.S.C. § 1313(r)(1) in Delphi. 662 F. Supp. 2d at 1354. In Delphi, the court held that CBP was responsible for the plaintiff's untimely filing. Id. Delphi had filed its claims without HMT and MPF because, at the time of filing, it could not include the fees in their drawback claims. Id. at 1350. Delphi was aware that it might soon be able to file these fees under law, due to advice

from a Supervisory Drawback Liquidator at CBP.  Id. at 1350.  The CBP official told Delphi that

it could reserve the right to file for those fees and file a protest later.  Id. at 1351.  When Delphi

did so, the claims were rejected as untimely.  Id. at 1352–53.  In Delphi, like in Aectra, this court

rejected the plaintiff's contention that CBP's regulations themselves made it impossible to

properly file its claims.  Id. at 1353.  Instead, the court held for Delphi because it had relied on the

misleading advice of a CBP official.  Id. at 1353–54.  The court emphasized the nature of CBP

misleading Delphi: "[u]nder the facts of this case, Delphi's reliance on advice by the [CBP]

supervisory drawback official for the Port of New York rendered [CBP] responsible for the

otherwise untimely filing and qualifies Delphi for a statutory extension under the final provision

§ 1313(r)(1)."  Id. at 1354.  Thus, the court has recognized CBP as "responsible" if an exporter

otherwise would have filed its claims in a timely fashion were it not for the inaccurate advice of a

CBP official.  In such circumstance, "Customs abused its discretion in not granting the extension

of time to file the drawback claims."  Id. at 1355.

        EchoStar's reliance on Delphi is misplaced.  During the period in which Laredo Becnel

was electronically filing EchoStar's submissions, FAK contacted EchoStar multiple times and

advised it to submit paper copies of its claims.  Def.'s Br. Ex. C, Dep. Tr. 110:15–110:21.  FAK

also told EchoStar that it was FAK's protocol to file drawback claims in hard copy form and

advised EchoStar to contact the San Francisco Drawback Office to confirm.  Id.  EchoStar told

FAK it would contact the San Francisco Drawback Office, but it failed to do so.  Id. at 111:6–

114:1.  In fact, EchoStar presumed that FAK had misunderstood the Guidance.  Id. at 123:19–

124:14.  Instead of seeking clarification from FAK or CBP, EchoStar ignored these initial

warnings.  Id. at 125:11–126:12.

EchoStar contends that the Guidance said that filers should not contact the Office to check on their claims.  Pl.'s Br. at 13.  The Guidance does state that "[u]nless your claim is outside the standard time frames . . . do not contact the drawback office for a status report."  Pl.'s Br. Ex. B. The Guidance included no language, however, instructing filers to refrain from asking CBP questions about how to file drawback claims, what constituted a complete claim, or whether filing through the ABI system alone, without Customs Form 7551, would be sufficient.  FAK, moreover, repeatedly told EchoStar to contact CBP to ask which documents CBP required in hard copy. Thus, EchoStar's inference that first-time filers could not contact CBP to clarify the rules of filing was unreasonable.

The record also indicates that EchoStar had in its possession the CATAIR document that said filers had to submit a paper claim.  Def.'s Br. Ex. D at 10 (acknowledging EchoStar's possession of the CATAIR document at the time of filing); Def.'s Br. Ex. A.  Moreover, as has been noted, the Guidance did provide that "a complete claim must have . . . CBP form 7551 - Drawback Entry."  Pl.'s Br. Ex. B, July 17, 2018, ECF No. 27.  EchoStar was, at minimum, on notice of the possibility that it had to file a paper claim.  Def.'s Br. Ex. D at 10.  Unlike in Delphi, there is no indication that EchoStar contacted CBP to resolve any uncertainty about how to file or that CBP responded with misleading advice.  EchoStar ignored FAK's warnings and failed to contact CBP to resolve any ambiguity created by the instructions in the Guidance and the CATAIR document.

Furthermore, as discussed above, EchoStar not only misinterpreted the Guidance issued by the San Francisco Drawback Office, but also unreasonably gave it more weight than the statute and regulations, which unequivocally enumerate the drawback filing requirements.  EchoStar acknowledged that the statute and regulations require that a complete claim include Customs Form

7551 and do not dispute that Customs Form 7551 could not be filed through the ABI system.

Instead of complying with statutory and regulatory requirements, EchoStar relied upon selected

portions of CBP's self-described "informal list of tips and key points [that] is not all inclusive"

from 2010 -- which was neither posted on CBP's website nor provided to EchoStar by CBP and

lacks the force of law.   Thus, the facts of <u>Delphi</u> are distinguishable, and its holding does not

support EchoStar's argument.   <u>See, e.g.</u>, <u>Flint Hills</u>, 333 F. Supp. 3d at 1380 ("The <u>Delphi</u> court

was very clear that its holding was a narrow one, particular to the facts in that case.").

> ### B.     *The January Letter Does Not Render CBP Responsible for EchoStar's Late Filing.*

EchoStar also claims that because CBP waited six months to issue the January letter

informing EchoStar that its claims were incomplete without paper claims, CBP was responsible

for the untimely filing.   This argument fails because a delay in a ruling from CBP, by itself, does

not render CBP responsible for a delay in filing.   <u>See Delphi</u>, 662 F. Supp. 2d at 1353–54 (holding

in part that CBP's delay in liquidating claims "was insufficient to compel Customs to grant a filing

extension").   EchoStar, moreover, cites no authority requiring CBP to notify it that its claim was

incomplete prior to the expiration date for each of the claims.

The January letter also does not waive the statutory time period because CBP did not

mislead EchoStar in a way that caused it to file its claims late.   The claims in question needed to

be filed before December 31, 2014 to be timely.   CBP's January letter gave a 15-day period for

EchoStar to submit its paper claims.   Compl. Ex. A.   CBP issued the letter after the claims had

already expired, but before CBP had reviewed them and determined them to be incomplete.   Thus,

the claims were already untimely when CBP issued the letter, so CBP's letter could not have

caused EchoStar to file its claims late.   Had CBP sent the letter before the claims had expired and

the 15-day time period reasonably led EchoStar to believe that it could file the paper claims in that

time, CBP may have abused its discretion.  However, that is not the case here.  EchoStar, moreover,

cites to no authority to support its position that CBP's January letter reopened the filing window.

In sum, the court concludes that CBP's issuance of the January letter does not make CBP

responsible for the untimeliness of the paper claims, and no extension is warranted.

With respect to the later four claims EchoStar filed in February 2015, the court concludes

CBP is not responsible for the untimely filings because the January letter put EchoStar on notice

of the need to file paper claims.  These claims were filed after the January letter, in which CBP

had already told EchoStar that it needed to file paper claims.  In fact, the January letter stated,

"acceptance of claims is based on the date the legal paper claim is submitted."  Compl. Ex. A.

When EchoStar then filed electronically before filing its paper claims, it was on notice that the

paper claim was the legal claim and that it had to submit the paper claim within three years of

export.  Thus, CBP did not mislead EchoStar at that point in time as to the proper filing of claims,

and CBP correctly denied these claims as untimely.

In sum, the court's determination, confined as it is to the record, is necessarily a narrow

one.  While the Guidance was not a model of clarity, on review of the entire record and

consideration of the governing statute, regulations, and clear precedent, the court concludes that

CBP is ultimately not responsible for EchoStar's failure to timely file complete drawback claims

because of either the Guidance or CBP's "late" notice to EchoStar to provide additional

documents.  Thus, EchoStar is not entitled to an extension under § 1313(r)(1).  The court

determines that CBP's denial of protests should be sustained.  EchoStar's request that this matter

should be remanded to CBP with instructions to reliquidate the entries at issue and refund the

duties paid by EchoStar is denied.

**CONCLUSION**

EchoStar's motion for summary judgment is DENIED with respect to all claims.   The

Government's motion for summary judgment is GRANTED.

**SO ORDERED.**

/s/ *Gary S. Katzmann*
Gary S. Katzmann, Judge


Dated: June 17, 2019
        New York, New York